The first case called for oral argument is Martin v. Board of Trustees Police Pension Fund. Counsel, whenever you're ready, you may proceed. Justice Golding-Hirsch, Justice Chapman, Justice Cates, I'm going to source the imperial behalf of the Shiloh Police Pension Board to discuss the Martin v. Shiloh Pension Board case. Detective Martin was a passenger in the front seat of a Denmark police vehicle while returning from St. Petersburg County Courthouse where he had performed duties. He had completed those duties at the State's Attorney's Office and when returning back to the station, he stopped for lunch. After lunch, he was returning with his motor vehicle as a passenger. He had a stoplight, he was rear-ended, and he sustained cervical spine injuries to his neck and back. The outline of the accident took place about 1.30. He stated during the hearing that his shift was scheduled to end at 4 p.m. He did not do any additional work that day. He returned to the station, filled out some accident reports, and according to Chief Stover, did no additional police work that day and then left at 4 o'clock. Mr. Orsi, it's my understanding there's no dispute between the parties as to the permanent nature of his injury. That is correct, ma'am. If he is disabled, the doctors have determined that before we found that he was disabled. So we can accept that fact as true and we don't need to discuss his injuries? We can't. The only issue here is whether this should be considered a line-of-duty disability or a not-line-of-duty disability, non-duty disability. Which involves an interpretation of the word act, as I understand. The statute, act of duty, you are correct. So I think that we need to focus on that, if you don't mind. Well, the key to this case, both briefs cite the Johnson case in Illinois Supreme Court from 1986. Johnson tells us we need to focus on the capacity in which the officer was acting at the time the injury occurred. That's exactly what the pension board did in reaching its determination. Detective Martin had completed all police work related to his duty that day. He was simply a passenger in an automobile returning back to the station. He's still on duty acting as a police officer, however. Yes, ma'am. And the key is this. There is a distinction between on duty and active duty. We all understand when you're on duty and you're injured, you're entitled to a worker compensation benefit. But the legislature in 1963 created the act of duty statute, which the Robbins case, out of Carbondale, has told us we equate the definition of active duty in order to award someone a line-of-duty disability. They must be engaged in an act of duty. Now, opposing counsel cites in his brief several cases that are patrol cases. He cites the Jones case, the Rose case, the Alm case. All three of those cases involve police officers that were on patrol, two in an automobile, one, the Alm case, on a bike patrol, that were injured. Patrol cases are active duty cases. We can see that point. The appellate courts have ruled in that direction. Chief Stover was asked during the hearing, what are the responsibilities of Detective Martin that day? I'm directed to page 67 of the transcript, line 15 to 19. Quote, detectives are different than patrolmen in that they don't do patrol duties when they are out and about in their vehicles in the community. Answer, correct. So one of the things the board tried to establish was Detective Martin in any way involved in patrol duties that day. Why was that question asked? Because the board was aware of the Jones case, the Rose case, the Alm case, all of which tell us if you're on patrol and are injured, it opens the door for active duty in order to receive the benefits. Now, opposing counsel in his brief on page 8 cites the Wagner case. Now, that's a Fifth District appellate court case involving the Belleville Police Pension Fund from 1991. In that case, a police officer sustained multiple injuries associated with both his left and his right knee, some of which allegedly happened on duty, some of which happened off duty. But the key finding was that he was serving a notice when he was on the front porch, he fell through a rotten plank in the porch and sustained injuries to his left knee. This is an active duty. He was engaged in police work, serving the notice to appear on a defendant. Opposing counsel claims that the Wagner case is indistinguishable from the case at large, and I will contend that opposing counsel is incorrect. Again, if we go back and look at the patrol cases, we see that we have an officer that is actively engaged in a police function. Here, we do not have that. Here, we have an officer who is simply a passenger in a vehicle, albeit a police vehicle. He's clearly on duty, entitling those worker cop benefits, but he is not engaged in a police activity. Opposing counsel cites in his brief a 1927 Illinois Supreme Court on page 14 of his brief. This court should totally discount that Illinois Supreme Court case. Why? It was decided in 1927, and our active duty statute was introduced by the legislature in 1963. And so we need to focus on the active duty statute in making our determination. We believe that the important case for this court to look at is the Podorsky case. The Podorsky versus Ferraro Police Department. This is a case that was decided by our second district appellate court. The facts in Podorsky are almost identical to the case that we have here. In Podorsky, we had a police officer who was assigned to a plainclothes division as an investigator to take photographs of a crime scene. He did not have the proper photography equipment, so he had to go to another station to borrow the equipment. He went to the crime scene. He took the photographs. He completed his police assignment. He was then in an unmarked police vehicle. He was seated in the back seat as opposed to our case where he's seated in the front seat. And at a stoplight, his vehicle was rear-ended. He suffered cervical spine injuries. The court concluded in Podorsky that since he had completed all of his police work and he was simply not engaged in an active duty at the time, he would be entitled to the non-active duty disability, not the line of duty disability. Opposing counsel also cites the Filscoff case, Filscoff versus Norfolk Police Pension Fund. That's out of the first district appellate court. That's a case where we had an on-duty police officer who was outside his police car, standing by the back door. There was another police officer driving, didn't see the police officer, and backed the vehicle up over his foot. He asked for the line of duty disability. The court awarded the non-duty disability. The officer argued the line was on patrol. You weren't going to go on patrol, but at the time the injury occurred, you weren't on patrol. You were outside the station house. The vehicle backed over your foot. That entitles you to the non-duty disability. Why do you think the trial court erred? Why do I think the trial court erred in our case? I think the judge didn't understand the distinction between the appellate court cases that talk about patrol, although I raised those cases to the trial court, and the fact that appellate courts have found that when you're on patrol, you have to stay alert, attentive. Things could happen at any moment. That's different than being a passenger in the front seat of a car. The fact that the police chief was asked, is a detective the same as a patrol officer? Does he have the same duties and responsibilities? We probed that very carefully, because at the response we had, well, yeah, any time you're in an automobile, you need to be attentive and respond. The chief said that's not the case here. These detectives didn't have that responsibility. So, to me, that's a- Was there any testimony about what their responsibility was? Well, when asked what were their duties of the day, their assignment was to go to the St. Clair County State's Attorney's Office and process a paperwork associated with the cases that they were working on. But clearly, if a detective had seen someone running from a bodega, for example, they wouldn't have ignored that. Back in the Q&A, we probed a bit of that very question, and we tried to figure out, I think the closest we came was if there was some sort of all-points emergency situation, is it possible that detectives would be- If patrol was overwhelmed and couldn't handle, say, a riot situation, some overwhelming circumstance, could the detective possibly be called out to assist? We did probe that in the transcript, but it's not part of their everyday routine duties. So I think we- No, but that's a riot or something from what you're describing. I'm talking about just if he'd been sitting in a stoplight and seen someone running from a quick shop carrying something and on all points went out saying we've just been robbed, he couldn't have ignored that, could he? According to Chief Stover's testimony, it would be the primary responsibility of patrol. Detectives would serve in the backup capacity. But they would respond. I mean, but I'm talking about a situation where they're actually seeing it. They would have to respond, wouldn't they? Or was that question never really asked? Your specific question wasn't really asked, but I think the review of the transcript would show we were probing to see at what point this detective would be more like a patrol officer as opposed to simply having detective-related duties. Well, did the transcript talk about, I mean, you start out in patrol. You don't just start out as a detective, do you? I mean, you have to work your way up.  Yes. As a matter of fact, Chief Stover said that he was a good officer and attended to his duties, and that's one of the reasons why he was promoted to detective and given those assignments. So you think we should treat the everyday patrolman who's on the beat differently than the gentleman who's worked his way up patrol and is now having more responsibilities as a detective? I think your focus needs to be on the capacity in which the officer was acting at the time the incident occurred. I'll give you another example. Let's say we had a chief of police. We know chief of polices are appointed by mayors, and the chief of police is at the station house, and he is summoned by the mayor. I need to see you in my office. Come visit me immediately. So he hops in his chief's car. He's on his way to City Hall. He's involved in the same automobile accident that Mr. Martin is involved in. We're in whiplash. He now has a neck injury. Should we award that police chief a line-of-duty disability? I would contend if this court does that, then you are equated on duty with line-of-duty, and you certainly have statute active duty, which is what the legislature has mandated in order to award someone a line-of-duty disability. Frankly, I believe that's where opposing counsel wants to go. His argument, when you read his brief, is if he's on duty as a police officer and is injured, he's entitled to a line-of-duty disability. Now, that's not what the legislature intended when they passed the active duty abstention. I mean, active duty says an act of police duty inherently involving special risks  imposed on a policeman by the statutes of this state or by the ordinances or police regulation of the city in which the article is in effect or by a special assignment or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman. Now, we can't just ignore that statute and say it doesn't exist. No, but the language of the statute says any act of police duty, so clearly they were on duty. We established that, right? Yes. And a detective's work inherently involves a special risk, doesn't it? Just in and of itself. I mean, once you raise your hand and you take the oath of office, do you have a special risk? Do you carry a gun? Was the officer carrying a gun that day? That inquiry wasn't made, so we don't know that. Okay. If we go back to the Johnson case, it seems to me that it's the only Supreme Court case that everybody wants to go to because that's the case that talks about looking at the capacity in which the officer was acting. Look at the facts in the Johnson case. This was an officer that was directly in traffic. There was an incident. He was summoned across the street for the incident when his injury occurred. Now, one side of that case was arguing he's just walking across the street. Average citizen's walking across the street. There's no active duty. But the court said the capacity that he was acting in was he was responding to a call for his services as a police officer. He was moving to that call when the incident occurred. That's why it's an active duty. That's why he's entitled to the benefit. In this case, right, he had completed all of his duties at the St. Bartholomew State's attorney's office. He was merely a passenger in a vehicle. He was not on patrol. So none of the patrol cases apply. He's a passenger in a car. So I would argue we have no distinction with Fedorsky. We have no distinction with Vilskov. So we have a second district and a first district ruling in favor of the position we advocate today. If this court goes the other way, we now have a fifth district in opposite to the first and the second district unless this court can find a distinction between those cases. And, frankly, I don't see the distinction. So unless there are other questions, I'll be happy to sit down and come back to you. Congratulations on your election. Congratulations. Thank you very much. It's been a long time coming, huh? It's been 104 years. Well, that's a great accomplishment. Yes. Congratulations. It's an honor to be a police court. My name is John Rosenstengel. I'm here on behalf of the athlete, David Martin. We respectfully request that this court affirm the lower court's ruling that this is an in-line-of-duty injury for two reasons. First, Mr. Martin was acting in the capacity of a police officer and doing an active duty when he was injured. And second, the cases relied on by the board in this matter look to a special risk or inherent risk that the average person doesn't have. And that's not what this court's requirement is in Johnson. If you look at the facts of this case, this is a detective. They have different duties than regular patrol officers. And David Martin was in the act of doing those duties as an investigator and a detective when he was injured. David Martin went with his supervising detective, Detective Beatty. They got in Detective Beatty's police car and they went to St. Clair County Courthouse. They left the jurisdiction to go to St. Clair County Courthouse because they each had different tasks that they had to complete for the course of their investigation. First, they had to turn in tickets to the clerk's office. That was Dr. David Martin's job. He also met with the state's attorney to get warrants. That's part of an investigation. That's part of an active duty. When asked about this at the hearing, the chief of police readily agreed that the things that these people were doing were not acts that were delegated to the public at large. They were not acts that anyone other than a police officer would do. So in other words, for those tasks to get accomplished, someone from the police department had to leave the jurisdiction of Shiloh, go to the St. Clair County Courthouse, and then come back. And they had just entered the jurisdiction when this accident occurred. They had just made their way back in. The only way they could get back into the jurisdiction were a direct route. So, excuse me, so you totally discount this whole patrol distinction? Well, I think there are cases that talk about what their job is. And there isn't. I don't think there's a distinction. I think the courts recognize what they are doing was part of their job, which is what we're asking this court to do as well. This was part of Detective Martin's job. And he was doing an active duty, which was unique to his job. But as Justice Cates said, if they had seen something on the way back, they would have been required to respond to that. So, I'd first like to talk about the capacity in which he was asking. Let me ask you a question. Does the record reflect that the detective was there to investigate with the state's attorney? He didn't remember specifically the exact conversation he had with the state's attorney. There was a meeting with the state's attorney. But there was evidence in the record that he was there to meet with the state's attorney, regardless of the conversation. Absolutely. As part of the record, we had signing sheets with the state's attorney's office that showed that both of these detectives signed in with the state's attorney's office and met with them as part of their job. He didn't remember the exact conversation, but it said warrants, I believe, on the signing sheet. Well, the warrants would only be issued if there was a probable cause for arrest, right? And an ongoing investigation. Right. Absolutely. So, back to the question I was asking before, does the record reflect that your officer was coming back from an investigation that only maybe a detective, as opposed to a patrol officer, could accomplish? Absolutely. I don't think there's any question about that. And do you think our standard of review is to review the trial court or the board's decision? I think it's a de novo review based on the facts of the trial court. I meant the board. The record. Yeah, the record. So, do you agree that we can examine the entire record reviewed by the board? I agree. Okay. And if you look at the Johnson case, the Johnson case has some language in there that is very interesting because it says, quote, we do not find anything in the statute or in its legislative history to support the defendant's strained construction that the term special risk only encompasses inherently dangerous activities. And then it goes on to say that police officers are assigned to duties that involve protection of the public discharged to those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile. Entering a building. And that sort of thing are things that the general public does, too. But when you're doing it as an act of duty, as is the case here, then it goes to what the Johnson case says. The crux is the capacity in which the police officer is acting. David Martin was on his way back from the courthouse in furtherance of an investigation. There's no question about that. He had to get from point A to point B as part of that furtherance of his job. And he was in furtherance of an investigation. It doesn't require a risk unique to a police officer, a gun battle or something along those lines. It doesn't require it. And as Mr. Orsi pointed out earlier, the Wagner case, which was decided by this case, this court in 1991, involving a fellow police officer, is very instructive. He fell through a rotted step. In every other case, those people make the same argument. He was serving a warrant, too. He was. He was serving a warrant at that time, and he fell through a rotted board. But they argued that that was something that the average citizen could have fallen through a rotted plank. But they looked at what that specific officer was doing. And if you look at what that officer's job was, on that day it was to serve a warrant. David Martin, my client, on this day that he was injured, his job was to go to St. Clair County Courthouse and do his job, which is what he was doing at the time that he was injured. At the time that Detective Martin and his supervising detective were returning to Shiloh, that was, I am assuming, or does the record show that that was part of their duty requirements to return to their jurisdiction, return to the police station, and continue whatever other duties they were assigned to do that day? That is correct, Your Honor. They had to go back. His shift didn't end for another two and a half, three hours. They were required to go back and continue working and finishing the task that they had started. And so the way they did that, they're allowed to eat lunch. They did that, and they came back to the police station to do their job. If you look at the other cases, and some of them are patrol cases, but they concentrate on what that officer was assigned to do. In Rose, you had multiple accidents, and one of which was determined to be the cause of part of his disability. In the Olin case, you had a person, an officer riding a bicycle as part of his patrol, and he got injured while riding his bicycle. They made the argument, the board did, that any person can get injured riding a bicycle. And the court said, no, it's the capacity in which he's acting. And the patrol cases are no different than what we have here because it's all part of what that officer was assigned to do on that particular day and on part of their job. And if you look at the Mingus case that we cited in our brief, it talks about a police officer that stopped to push a car out of the snow and was injured while doing that. Mr. Rosenstein, what you're saying is because your client was involved in an active investigation that's only required by a police detective, that he'd gone to the state's attorney's office, that this was all one continuous act that was a police duty not ordinarily assumed by an ordinary citizen. I mean, an ordinary citizen wouldn't go apply for a warrant. Or even take the tickets to the court's office. That's not even something that an ordinary citizen is allowed to do in the village of Shiloh. I specifically asked the chief of police about that and said, have you ever had an ordinary citizen go do that? And they said no. Now, there are some cases that talked about, that denied an in the line of duty, that talked about, I think, the way to get around it, where they said, well, we sometimes assign those to members of the public to do things. I think the Pedorsi case, if I'm not mistaken, talked about that briefly where it said, well, they sometimes let outside entities take photographs of scenes and things like that. So it's not always a police officer. There was one case where they sometimes allow citizens to write tickets in an apartment situation, and they said, no, because we let those people that are ordinary citizens do that, it's not necessarily something that's specifically from a police officer's duty. That's not the case here. We were very clear with the chief, and he was very clear in his answers. There would never be a citizen that goes to St. Clair County Courthouse to do the things that these gentlemen were doing as part of their job. And the fact that it's a requirement for them to get part of their investigation done at the courthouse or to continue the investigation, as well as to take the ticket receipts to the clerk's office, so the revenue comes into the city or the village, that's a requirement of the police only. And I think that's, when you look at the big picture here, an active duty is something like they described in the Johnson case. It's a Supreme Court case. It's something that was followed by this court in Wagner, and you would be continuing that line of cases by following that distinction of what is the crux of what they are doing, the capacity in which they are acting. And the Johnson court was very clear to point out that police officers have to do things that everyday citizens have to do all the time. They drive a car. They walk across the street. But if they're acting in a capacity as a police officer and they're heard, then this statute is specially designed for them, and that's why we would urge this court, or respectfully request this court, to affirm the lower court's decision and find it in the line of duty. If there are no more questions, I would be happy to sit down. Thank you. Thank you very much, Your Honor. Counsel? Justice Kate, in response to a question you asked Mr. Rosenstengel, this court's responsibility is to review the record and review the board's determination to determine whether or not their decision was against the manifest way of the evidence. And Justice Goldenberg, you asked Mr. Rosenstengel a question as to whether or not he, in completing his duties at the St. Clair County Courthouse, was he traveling back to the station to perform additional duties. Well, that's part of it, but also whether he was required to go back to the station to perform additional duties. The record does reveal that his shift was scheduled that day to go until 4 o'clock. This accident occurred about 1.30 p.m. We did probe in the transcript, was he going back to the station to continue with the work associated with his visit to the State's Attorney's Office? In other words, whatever he had to do in his meetings with the State's Attorney's Office, did he have to then bring it back and continue on? He could remember. He honestly said in the transcript, I don't remember exactly what more I was going to do that to him. And when we asked the Chief that same question, the Chief said, I don't think he did any extra work that day. When the accident happened at 1.30, he came back to the station to fill out accident reports associated with his injury, but nothing to do with his police work or police assignment. Mr. Orsi, is he – But he was – Go ahead. But he would – having been in that accident, he would be required to complete that paperwork for the village of the station. Is that correct? When we asked him that question, he said, I can't recall if there was any more work I had to do on that case. No, no, no, that's not what I'm asking. Let me rephrase it. Since he had been in this accident and he was on duty in whatever capacity, and we'll decide that, he was required to fill out some sort of accident form report at the station since he was a detective for the village and the village is involved. I believe it's normal course of business to ask people to fill out accident reports if they're injured. Okay, sorry. Is it the Rose case where the officer fell through the rotten step? No, that was the Wagner case involving a Belleville police patient who was a 5th District case. I'm trying to distinguish that case from this case in the sense that, obviously, that wasn't inherent in the type of activity he was doing. In fact, if he was leaving, serving the warrant, it seems very similar to this case. Here's how I would distinguish the Wagner case from our case involving Detective Martin. If we look at the capacity in which Wagner was acting, he was engaged in a police activity serving the subpoena, serving the notice to appear. He was on the front porch carrying out that police activity. Is that a danger? Are you trying to say there's some danger inherent in that? Or what makes that different than dealing with the state's attorney, which is also part of his? Whether anyone would take judicial notice of it, we've seen incidents on the news where police officers knock on the front door to serve papers, and they're greeted by a shotgun or someone violently coming toward them. We had Officer Gruff in Belleville six or seven years ago that was engaged in a situation. They were going to serve a warrant, and he was shot in the face with a shotgun. So one never knows what's on the other side of that door. So I would argue that is a distinguishing factor, that you put yourself at risk when you're engaged in that type of police activity. On the other hand, Mr. Orsi, special process servicers are appointed all the time to issue subpoenas for trial, things like that, or to serve subpoenas, right? A distinction that wasn't raised in the Wagner case. And perhaps had it been, we would have gone in a different direction. So it's a valid point, Your Honor. I would say because Wagner was in the process of carrying out that police function, when he fell through the rotten step, there is the cause of connection. We are much more removed with Detective Mark. He had finished his function. I'm sorry. Do we know whether or not he had finished serving the subpoena when he fell through the board? My sense in reading the case is he was in the process of doing that activity. But if you take what Justice Goldenherz is trying to drive at is he had a duty that day. He was on shift, and he was assigned to go to the state's attorney's office. And my question to you is, is this court supposed to review the record and parse out when he completed the duty? I mean, you keep saying he had completed his duty. Well, he had completed his assignment to take the tickets to the courthouse, and the detective had completed his assignment to perhaps see or discuss with the state's attorney. I believe that's very valid. So you're asking us to parse out portions of a day, right? I am, because if we look at the Morgan case. Go ahead. The Morgan case, which was decided in 1988 after the Johnson case, the Morgan case by the 1st District was a case in which the police officer was investigating the accident scene. He goes back to the station house to complete his incident reports, and he sits down at his desk, and the chair flips out from under him, and he blows out a disc in his back. He's awarded the non-immunity disability. He sought the non-immunity disability, but the court suggested in that case he was simply filling out paperwork that anybody could fill out. He had completed his duty of police work at the accident scene. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take this case under advisement, and congratulations again.